NOT FOR PUBLICATION [Dkt. No. 271, 304]

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

| | |
|---|---|
| FINANCIAL CASUALTY SECURITY COMPANY, INC., <br><br> Plaintiff, <br><br> v. <br><br> JAMES V. MASCOLA, et al., <br><br> Defendants. | Civil No. 1:11-cv-04316 (RMB/JS) <br><br> **OPINION** |

Appearances

Samuel M. Silver
2050 Route 27, Suite 105
North Brunswick, NJ 08902
    Attorneys for Plaintiff

Eugene M. Rondeau
Attorneys at Law
1410 Hooper Ave., 2nd Floor
Toms River, NJ 08753
    Attorneys for Defendant

**Bumb**, UNITED STATES DISTRICT JUDGE:

In this action, Plaintiff Financial Casualty & Surety, Inc. ("FCS"), a Texas corporation, asserts claims against a number of defendants, including Defendant Jeanne Rondeau ("Rondeau"), for breach of contract. Rondeau has moved for summary judgment arguing that she is not personally liable under the contract at issue because she only signed it in her corporate capacity as a

1

member of a limited liability company ("LLC").[1] For the reasons set forth below, Rondeau's motion is granted.

I. BACKGROUND

Rondeau was a member of A1 Bail 4U LLC ("A1 Bail"), a New Jersey limited liability company that operated as a bail bond agency in New Jersey. [Docket No. 271, Jeanne Rondeau Affidavit at 17].

On or about November 21, 2008, FCS entered into a Sub-Producer Bail Bond agreement (the "Agreement"). [Docket No. 278, Exhibit A-1 ("Agreement") at ¶ 4]. Importantly, the Agreement contains a choice-of-law provision in which FCS may elect to have disputes concerning the Agreement decided under Texas law. [Agreement at ¶ 28 ("At the discretion of [FCS], the Agreement is to be interpreted in accordance with the laws of the State of Texas, where company is based, or of the Sub-Producer's home state.")].

The Agreement begins by identifying "Jeanne Rondeau A1BAIL4U, LLC" as the relevant Sub-Producer. [Docket No. 278, Ex. A-1 at 4. (the "Agreement")("Jeanne Rondeau A1BAIL4U, LLC (hereinafter 'Sub-Producer')]. The following paragraph, in contrast, states, "The term 'Sub-Producer' shall collectively refer to Jeanne Rondeau and/or A1BAIL4U". [Agreement at ¶ 1].

---

[1] Plaintiff has also moved for leave to file a sur-reply brief on choice of law principles. [Docket No. 304]. That motion is GRANTED.

2

Under the terms of the Agreement, the Sub-Producer was authorized to issue bail bonds with FCS as surety. [Agreement at ¶ 17]. The "Sub-Producer" also agreed to indemnify any and all liability arising from the Agency Agreement. [Id.]

The Agreement has two sections requiring the Sub-Producer's signature. [Agreement at 13-16]. The first signature block is pre-typed with "SUB-PRODUCER Jeanne Rondeau." [Agreement, at 13]. The second is pre-typed with "Sub-Producer: Jeanne Rondeau." [Agreement at 16.] A1 Bail was not identified as the Sub-Producer in any signature block. In each signature block, Rondeau signed "Jeanne Rondeau, Member A1 Bail 4U." [Id.].

At some point in 2010, Rondeau left A1 Bail. [Docket No. 271, p. 20, ¶ 14]. FCS subsequently filed suit in federal court, claiming diversity jurisdiction seeking indemnity under the Agreement from Rondeau personally for outstanding bail bond forfeiture debts. See [Docket No. 278 at 1]. FCS maintains that Texas law should govern the dispute due to the Texas choice-of-law provision within the Agreement. FCS argues that, under Texas law, Rondeau personally guaranteed the contractual obligations of A1 Bail. Rondeau argues that New Jersey law should apply and, under New Jersey law, she is not personally liable. Rondeau argues that she is entitled to summary judgment on this ground.

II.   LEGAL STANDARD

3

Summary judgment is appropriate where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; Celotex Corp v. Cartrett, 477 U.S. 317, 323 (1986). To avoid summary judgment, the non-moving party must "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." Celotex Corp., 477 U.S. at 324. A genuine issue of material fact is one that will permit a reasonable jury to return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In evaluating the evidence, the Court must view the inferences to be drawn in the light most favorable to the nonmoving party. Curley v. Klem, 298 F. 3d 271, 276-77 (3d Cir. 2002).

III. ANALYSIS

Because this Court sits in diversity and the parties dispute whether Texas or New Jersey law applies, this Court must apply New Jersey choice-of-law rules to determine which state's laws govern. See Gibbs ex rel. Gibbs v. Carnival Cruise Lines, 314 F.3d 125, 131 (3d Cir.2002) (citing Klaxon Co. v. Stentor Elec. Mfg. Co., Inc., 313 U.S. 487 (1941)). Under New Jersey law, where, as here, there is a contractual choice of law provision, courts follow a two-step inquiry considering whether:

4

(1) there is an actual conflict between the laws of the two states; and (2) if there is a conflict, whether the choice-of-law provision in the contract should be enforced. See Kramer v. Ciba-Geiby Corp. 854 A.2d 948, 958 (N.J. Super. Ct. App. Div. 2004) (citing Gantes v. Kason Corp., 679 A.2d 106 (N.J. 1996). This Court addresses each step of the analysis in turn.

    A.    Step 1: Whether There Is a Conflict Between New Jersey and Texas Law

The parties do not dispute that, under Texas law, Rondeau's signature would personally bind her under the contract. Under New Jersey law, in contrast, Rondeau would not be personally liable. New Jersey law requires clear and explicit evidence of a party's intent to bind herself personally. See Home Buyers Warranty v. Roblyn Dev. Corp., MER-L-464-05, 2006 WL 2190742, at *5 (N.J. Super. Ct. App. Div. Aug. 4, 2006) (requiring "clear and explicit evidence of [the party's] intention to bind [themselves] personally"). That clear and explicit intent can generally be demonstrated by having the corporate officer sign twice – once in the officer's corporate capacity and once in the officer's individual capacity. See City of Millville v. Rock, 683 F.Supp. 2d 319, 327 (D.N.J. 2010).

Because the Sub-Producer definition was ambiguous, alternating between "Rondeau A1Bail4U" and "Rondeau and/or A1Bail4U," and because Rondeau signed each Sub-Producer

5

signature block only once and indicated "member A1 Bail 4U" with each signature, there is no clear and explicit evidence that Rondeau intended to waive her personal immunity.

While FCS argues that the signature block listing of only Rondeau's name is suggestive of an intent to bind Rondeau personally, that evidence is still far too ambiguous to overcome the high burden of demonstrating a clear intent to relinquish personal immunity.[2]  Accordingly, New Jersey and Texas law conflict in the treatment of Rondeau's personal liability and this Court must proceed to step two of the choice-of-law analysis and determine whether the choice-of-law clause in the Agreement should be enforced.

    B.    Step 2: Whether the Choice of Law Provision Should Be Enforced

For step two of the analysis, New Jersey follows the Second Restatement of Conflict of Laws, which provides that a choice-of-law clause will be enforced unless either:

>    (a)  the chosen state has no substantial relationship to the parties or the transaction and there is no

---

[2] FCS relies heavily on Yardley Travel Ltd. v. Betar, A-570-09T1, 2012 WL 2737802 (N.J. Super. Ct. App. Div. July 10, 2012) in arguing that Rondeau would be personally liable under New Jersey law. In Yardley, a corporate officer was found to have released both his personal claims and the claims of his company when he signed two release agreements notwithstanding the fact that he signed as officer of the company and the agreements did not specifically reference him personally releasing any claims. Id. at *15. Yardley is inapposite in three key respects: (1) Yardley dealt with the release from liability by a corporate officer in his personal capacity, not the inadvertent imposition of liability on a corporate officer; (2) there was evidence of prior oral agreements in which the officer at issue agreed to personally release any claims; and, (3) there was evidence that the officer did not, in fact, have the authority to bind the corporation and therefore could only have been releasing his own claims.  Id.

>> other reasonable basis for the parties' choice; or,
>
> (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.

Instructional Systems, Inc. v. Computer Curriculum Corp., 614 A.2d 124, 133 (citing to RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 187(2) (West 1971)).

The first exception listed in the Restatement approach does not apply because FCS is headquartered in Texas, giving Texas law a substantial relationship to the parties. Instructional Systems, 614 A.2d at 133 (finding that the plaintiff being domiciled in the state listed in the choice-of-law provision constituted a substantial relationship); RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 187 cmt. f (1971).

For the second exception to apply, this Court must find: (1) New Jersey law has a materially greater interest than Texas in the determination of the particular issue; (2) the application of Texas law would be contrary to a fundamental policy of New Jersey; and (3) under the general choice of law factors in § 188 of the Restatement, New Jersey law applies. See Newcomb v. Daniels, Saltz, Mongeluzzi, & Barrett, 847 F.Supp.

7

1244, 1248 (D.N.J. 1994). The Court addresses each point in turn.

       1.   New Jersey Has a Materially Greater Interest than Texas

Factors considered in determining which forum has a materially greater interest include the place of negotiation, place of execution, place of performance, citizenship of the parties, and the policy behind the law at issue. See Actega Kelstar, Inc. v. Musselwhite, 09-1255, 2010 U.S. Dist. LEXIS 18801 at *9 (D.N.J. March 2, 2010) (citing TransPerfect Translations, Inc. v. Leslie, 594 F. Supp. 2d 742, 751 (S.D. Tex. 2009)); See also Business Incentives Co., Inc. v. Sony Corp. of America, 397 F.Supp. 63, 67 (S.D.N.Y. 1975); Winer Motors, 506 A.2d 817 (reasoning that New Jersey's interest in the particular contract was greater than Connecticut's interest because the franchisee was located in New Jersey).

Aside from the choice-of-law provision, the only contact with Texas is that FCS is domiciled there. There is no evidence that Texas has any strong interest in having its law apply to the dispute. New Jersey, on the other hand, has far greater contacts. FCS is a New Jersey licensed insurance company, Rondeau and A1 Bail are New Jersey citizens, the contract was negotiated and executed in New Jersey, and the contract was performed in New Jersey. And as discussed below, New Jersey has

a strong interest in protecting its citizens from incurring individual liability inadvertently.  Because New Jersey has a greater connection with the litigation, and a strong public policy interest, New Jersey has a materially greater interest in the determination of this particular issue.

    2. <u>Liability Would Violate a Fundamental New Jersey Policy</u>

There is no exact definition or detailed statement to describe situations where a "fundamental policy" is found to exist. RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 187 cmt. g (1973). Courts, in defining what a fundamental policy entails, have looked to statutes, court decisions, and court rules. Federal and state courts have found fundamental policies in a number of different areas, including the regulation of contingency fee agreements, protection of franchisees, regulation of loan interest rates, reducing government waste, and the protection of consumers in installment purchases.[3] For three reasons, the Court

---

[3] <u>Winer Motors</u>, 506 A.2d at 821 (finding that Connecticut, through legislation, had "overriding interest in the fair treatment of its franchisees" despite a similar New Jersey statute); <u>Kaneff v. Del. Title Loans, Inc.</u>, 587 F.3d 616, 624 (3d Cir. 2009) (finding "Pennsylvania's interest in the dispute, particularly its antipathy to high interest rates such as the 300.01 percent interest charged in the contract at issue, represents such a fundamental policy") (citing <u>Pa. Dept. of Banking v. NCAS of Delaware, LLC</u>, 948 A.2d 752, 754 (Penn. 2008)); <u>E-Rate Consulting, Inc. v. Harrisburg Sch. Dist.</u>, 04-5258, 2006 U.S. Dist. LEXIS 93929 at *29-31 (D.N.J. Dec. 18, 2006) (holding that notwithstanding similar New Jersey statute, Pennsylvania laws aimed at increasing oversight and accountability in educational related contracts would be contravened by applying New Jersey law because "[r]educing government waste and corruption is surely a fundamental policy of any state"); <u>Turner v. Aldens, Inc.</u>, 433 A.2d 439, 442 (N.J. Super. Ct. App. Div. 1981) (holding that honoring the contract's choice-of-law provision would contravene

concludes that protecting individuals acting on behalf of their company from unintended liability is a fundamental policy of the New Jersey.

First, the New Jersey legislature has recognized the important of this interest by affording significant protection to corporate officers and members against personal liability.[4] The framework adopted by the New Jersey legislature provides that:

> Except as otherwise provided by this act, the debts, obligations and liabilities of a limited liability company. . . . shall be solely the debts, obligations and liabilities of the limited liability company; and no member, manager, employee or agent of a limited liability company shall be obligated personally for any such debt, obligation or liability of the limited liability company. . . . by reason of being a member, or acting as a manager, employee or agent of the limited liability company.

N.J. Stat. Ann. §42:2B-23 (West 1994).

Second, New Jersey courts' decisions evidence that this is a fundamental policy. New Jersey courts have both acknowledged the weight of this statutory framework in their own decision making and crafted common law protections, like the two

---

strong New Jersey policy in protecting consumers as intended by the Retail Installment Sales Act, N.J. Stat. Ann. § 17:16C-1 et seq. (West 1981)).

[4] While Texas similarly provides protection to members of LLCs against individual liability, numerous cases have found a fundamental policy to be contravened notwithstanding a similar statute in the state indicated by the choice-of-law provision. See supra note 3; Tex. Bus. Orgs. Code Ann. § 101.144 (West 2006)("Except as and to the extent the company agreement specifically provides otherwise, a member or manager is not liable for a debt, obligation, or liability of a limited liability company, including a debt, obligation, or liability under a judgment").

signature requirement described above, to insulate individuals from unintended corporate liability. See <u>NYDIC Mgmt. Servs., LLC v. DS Montvale, LLC</u>, A02473-06T2, 2008 N.J. Super. Unpub. LEXIS 1054 at *3 (N.J. Super. Ct. App. Div. Nov. 8, 2007) (noting the Court was persuaded by "the statutory protection provided to the members of such companies against personal responsibility for the debts of the companies" in N.J. Stat. Ann. § 42:2B-23).

Third, a revision to the statutory code, set to take full effect in March 2014, reaffirms the fundamental nature of New Jersey's policy of protecting corporate officers from personal liability. The revised language closely tracks the current statute, but specifically adds:

> <u>The failure of a limited liability company to observe any particular formalities</u> relating to the exercise of its powers or management of its activities <u>is not a ground for imposing liability</u> on the members or managers for the debts, obligations, or other liabilities of the company.

N.J. Stat. Ann. § 42:2C-30 (West 2013) (emphasis added). This new language reiterates the strength of this policy and New Jersey's reticence in imposing unforeseen personal liability on LLC members acting on behalf of their companies.

Because it is a fundamental policy of New Jersey to protect individuals from inadvertent corporate liability, and Texas law would find Rondeau liable under ambiguous circumstances,

application of Texas law would violate a fundamental policy of the state of New Jersey.

    3. <u>New Jersey is Otherwise the State of Applicable Law</u>

New Jersey would also be the state of applicable law in the absence of an effective choice-of-law provision in the contract. The factors for consideration are outlined in Section 188 of the Second Restatement. They include: (a) the place of contracting; (b) the place of negotiation of the contract;(c) the place of performance;(d) the location of the subject matter of the contract; and, (e) the domicile, residence, nationality, place of incorporation and place of business of the parties. RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 188 (West 1973).

This analysis closely mirrors the determination of which state has a materially greater interest discussed above. For those same reasons, New Jersey would be the state of applicable law rather than Texas. The place of contracting, negotiation, and performance are all in New Jersey.  The subject matter of the contract is the issuance of bonds in New Jersey and the Defendant and A1 Bail are residents of New Jersey.  The only contact with Texas is that FCS is domiciled there. This lone contact is outweighed by the numerous connections the parties and contract have with New Jersey.

IV. <u>Conclusion</u>

For the reasons discussed above, there is a genuine conflict between New Jersey and Texas law regarding the imposition of liability on corporate members, and the enforcement of the Agreement's choice-of-law provision would violate a fundamental policy of New Jersey. Accordingly, New Jersey law should govern this dispute.

Under New Jersey law, Rondeau did not explicitly and clearly express an intention to make herself personally liable in the contract. Therefore, her one signature as a member of A1 Bail cannot be construed to bind both A1 Bail and herself personally. Defendant's motion for summary judgment is therefore GRANTED.

s/Renée Marie Bumb<br>RENÉE MARIE BUMB<br>United States District Judge

Date: July 19, 2013