NOT FOR PUBLICATION                           [Docket Nos. 483 & 488]

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE**

```
FINANCIAL CASUALTY & SURETY,
INC.,

        Plaintiff,
                                    Civil No. 11-4316 (RMB/JS)
        v.

JOHN BONINO and 007 BAIL BONDS,     OPINION
INC.,

        Defendants.
```

Appearances:

Samuel M. Silver
2050 Route 27, Suite 105
North Brunswick, NJ 08902
     Attorneys for Plaintiff

Michael Resavage
Law Office of Resavage and Battista, LLC
9 Vella La Vella Lane
Egg Harbor Township, NJ 08234
     Attorneys for the BGM Defendants

Joseph Liguori
Mazraani & Liguori, LLP
1901 Route 130
Second Floor
North Brunswick, NJ 08902

Ksenia Proskurchenko
Proskurchenko Law Group, LLC
570 North Broad Street, Suite 13
Elizabeth, NJ 07208
     Attorneys for Defendants John Bonino and 007 Bail Bonds

I.  Introduction

This matter comes before the Court upon two post-trial motions filed by Plaintiff, Financial Casualty & Surety, Inc., ("FCS") [Docket Nos. 482 & 483], and the supplemental briefing of the parties, including Defendants, John Bonino and 007 Bail Bonds (the "Defendants"), addressing whether an implied contract is sufficient to sustain an award of attorney's fees and whether a new trial is warranted. [Docket Nos. 481, 482 & 484].  The Bail Group Management, LLC, James Mascola and Genevieve Steward, (the "BGM Defendants") have also submitted a brief on the issue of their dismissal from this matter. [Docket No. 475].

In a prior Opinion dealing with the parties' respective post-trial motions, this Court requested further briefing on the following issues, including the submission of appropriate record citations and supporting materials where applicable:

- Whether the verdict was irreparably inconsistent and required a new trial pursuant to Federal Rule of Civil Procedure 49(b)(4)[1];

- Whether attorney's fees can be awarded pursuant to an implied contract either as a matter of law, and, if so, whether there was evidence at trial sufficient to sustain the award;

- Whether contingent attorney's fees could be awarded; and

---

[1] Rule 49(b)(4) states: "When the answers are inconsistent with each other and one or more is also inconsistent with the general verdict, judgment must not be entered; instead, the court must direct the jury to further consider its answers and verdict or must order a new trial."

- Whether the Order of Dismissal should be set aside as to the BGM Defendants.

Based on the record now before it, this Court will discuss the resolution of these issues below.[2]

    II.  <u>Motion to Set Aside Dismissal of the BGM Defendants</u>

In the previous Opinion, this Court found that it would not address Plaintiff's Motion to Set Aside Order of Dismissal and to Enforce Settlement [Doc. No. 483] until the BGM Defendants submitted a response. BGM subsequently submitted a response to this Court.

Following the first day of trial, Plaintiff reached a settlement agreement with the BGM Defendants and the relevant terms of that settlement were read into the record on May 7, 2014. Specifically, Plaintiff noted on the record that the terms of the settlement called for, in relevant part:

> Entry of an agreed judgment in the amount of $750,000 in favor of Financial Casualty and Surety Company against James Mascola, Genevieve Steward and Bail Group Management. East Coast Bail Bonds will be dismissed from this proceeding with prejudice.

May 7, 2014 Tr. 400:7-11.

The following dialogue also occurred with the Court with

---

[2] This Court, again, notes the poor briefing that has been submitted in this matter. Many, if not most, of the case citations are from jurisdictions not relevant here and the brief submitted by Bonino and 007 contains no record citations whatsoever. To say that this has imposed an undue burden on the Court is putting it mildly.

3

respect to the settlement:

> THE COURT: Okay. I assume that the Court will retain jurisdiction over the matter.
>
> MR. SHEINESS: It will.
>
> THE COURT: Okay. And the documents will be submitted.
>
> MR. IRELAN: Immediately post-trial.
>
>     \* \* \*
>
> THE COURT: All right. Well, that will include the consent judgment.
>
> MR. SHEINESS: Motion to dismiss <u>and a consent judgment</u>. Motion order to dismiss East Coast and then the consent, <u>agreed consent judgment.</u>
>
> THE COURT: Well, what I'll do is I'll terminate the BGM v. [sic] East Coast and the individual defendants pursuant to the terms of the settlement, and you folks will have 60 days to work out your settlement papers. And if you need more time, then you'll make your application.

May 7, 2014 Tr. 403:2-20 (emphasis added). Pursuant to an Order dated May 7, 2014, the BGM Defendants were dismissed from this matter and the Court expressly retained jurisdiction over the parties' settlement. The Order of dismissal states:

> (1) This action is hereby DISMISSED as to defendants James V. Mascola, Genevieve Steward, Bail Group Management, LLC and East Coast Bail Bonds, LLC, only without costs and without prejudice to the right, upon motion and good cause shown, within 60 days, to reopen this action if the settlement is not consummated; and
>
> (2) If any party shall move to set aside this Order of Dismissal as provided in the above paragraph <u>or pursuant to the provisions of Fed. R. Civ. P. 60(b), in deciding such motion the Court retains jurisdiction of the matter to the</u>

> extent necessary to the extent necessary to enforce the terms and conditions of any settlement entered into between the parties.

Docket No. 432 (emphasis added).[3]

Thereafter, both the BGM Defendants and Plaintiff submitted an Agreed Final Judgment, the consent judgment referred to above, to this Court on June 20, 2014 [Doc. No. 473]. It is now apparent that due to a clerical oversight, this Court did not execute or enter the agreed final judgment that was signed by both parties and provided to this Court. Plaintiff now seeks relief from this Court pursuant to Federal Rule of Civil Procedure 60(b), alleging that the BGM Defendants were mistakenly dismissed from this matter and are now in violation of the settlement agreement for failure to pay the agreed upon amount of $750,000. [Doc. No. 483]. In response, the BGM Defendants contend that "it is unclear that the parties intended to have an executed Judgment signed by the Court and filed of record – in other words, entered." Doc. 490 at 2.

Under Federal Rule of Civil Procedure 60(b)(1) or (3), a party is entitled to relief where: "On motion and just terms, the court may relieve a party or its legal representative from a

---

[3] Because this Court expressly retained jurisdiction, it may decide the motion to enforce the settlement. See Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375 (1994)(discussing interplay of jurisdiction and enforcement of settlement agreements).

5

final judgment, order, or proceeding for the following reasons:

(1) mistake, inadvertence, surprise, or excusable neglect;

* * *

(3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party[.]"

The BGM Defendants assert that the Plaintiff's motion is untimely because, per the text of the Rule itself, "[a] motion under Rule 60(b) must be made within a reasonable time—and for reasons (1), (2), and (3) no more than a year after the entry of the judgment or order or the date of the proceeding."  Fed. R. Civ. P. 60(c)(1).

As an initial matter, this Court notes that Plaintiff's motion was submitted less than a year after the Court's Order dismissing BGM was entered.  Moreover, because it is most likely, indeed reasonable, that Plaintiff expected that this Court would eventually sign and enter the judgment, Plaintiff cannot be faulted for the Court's delay.  Therefore, this Court finds the motion timely.

The Court also agrees with Plaintiff that BGM should be judicially estopped from asserting its frivolous argument that the Judgement was not intended by the parties to be entered by this Court. For judicial estoppel to apply: (1) the party to be estopped must have taken two irreconcilably inconsistent

6

positions; (2) the party must have changed his or her position in bad faith; and (3) the Court's application of judicial estoppel must be narrowly tailored to address the identified harm, or remedy the damage done. Montrose Med. Grp. Participating Sav. Plan v. Bulger, 243 F.3d 773, 779-80 (3d Cir. 2001). This doctrine applies here.

   BGM's statement that it is "unclear that the parties intended to have an executed Judgment signed by the Court and filed of record," is directly contradicted by its prior representations to the Court on the record: counsel for BGM specifically asserted that an "agreed consent judgment" would be submitted by the parties. Moreover, the proposed judgment submitted to the Court contained the signatures of counsel for both Plaintiff and BGM. BGM's about-face is in bad faith. See Detz v. Greiner Indus., 224 F. Supp. 2d 905, 918 (E.D. Pa. 2002)(noting that "any benefit or advantage sought or gained by inconsistent positions may be considered as evidence of bad faith."). It was clear that the parties agreed to the entry of a consent judgment. BGM Defendants cannot defeat that agreement simply because it was not timely entered by the Court. Accordingly, this Court finds that entering the judgment, which was previously not entered due to a simple clerical oversight, and enforcing the settlement agreement is a narrowly tailored way to address the harm at issue. See Malascalza v. AMTRAK, No.

7

93-474, 1996 U.S. Dist. LEXIS 4198, *13 (D. Del. Mar. 12, 1996)(enforcing settlement agreement via judicial estoppel and noting that "[t]he guiding principle which has given rise to the doctrine of judicial estoppel is that a 'party who has gained an advantage by characterize the law or facts involved in a case should not later be able to contradict that characterization to obtain a further advantage.'"), aff'd, 118 F.3d 1576 (3d Cir. 1997).

In light of the above, this Court will enter the Judgment as submitted by the parties as an Agreed Final Judgment to this Court on June 20, 2014, [Doc. No. 473], and will grant Plaintiff's Motion to Enforce Settlement.

III. Inconsistent Verdict and Motion for New Trial

While this Court has expressed serious concern as to whether the inconsistent verdict rendered by the jury (specifically its finding that both Defendants John Bonino and 007 Bail Bonds breached their implied contract, but awarding damages against Defendant Bonino only), it is mindful of its duty to "attempt to harmonize the [jury's] answers, if it is possible under a fair reading of them: 'Where there is a view of the case that makes the jury's answers to special interrogatories consistent, they must be resolved that way.'" Gallick v. Baltimore & O.R.R. Co., 372 U.S. 108, 119 (1963)

8

(quoting Atl. & Gulf Stevedores, Inc. v. Ellerman Lines, Ltd., 369 U.S. 355, 364 (1962)). See Graboff v. Colleran Firm, 744 F.3d 128, 138 (3d Cir. 2014)("when faced with a seemingly inconsistent verdict, a court, to the extent possible, should read the verdict to resolve the inconsistencies.").[4]  In other words, this Court must review the jury's verdict and that verdict "'must be molded consistently with a jury's answers to special interrogatories when there is any view of the case which reconciles the various answers.' Thus, a trial court is 'under a constitutional mandate to search for a view of the case that makes the jury's answers consistent.'" Loughman v. Consol-Pennsylvania Coal Co., 6 F.3d 88, 105 n.17 (3d Cir. 1993)(quoting McAdam v. Dean Witter Reynolds, Inc., 896 F.2d 750, 763-64 (3d Cir. 1990)).

Keeping this obligation in mind, this Court finds that, at this juncture, it is still unable to determine whether the jury's answers in the verdict are irreconcilable such that a new trial is warranted.  For example, the jury awarded damages against Bonino but not against 007 Bail Bonds even though it

---

[4] The Court notes that counsel for Defendants raised the issue of an inconsistent verdict before the jury was dismissed and, therefore, preserved the objection.  Tr. 893:2-7.  See Frank C. Pollara Group, LLC v. Ocean View Inv. Holding, LLC, 784 F.3d 177, 191 (noting that an inconsistency objection must be made prior to the jury being discharged).  Thus, Plaintiff's contention that "No party preserved Rule 49(b) complaints" is unfounded.

9

found a breach by both parties. While seemingly inconsistent at first blush, this view may be reconciled if the evidence presented to the jury at trial demonstrates that 007 Bail Bonds is now defunct. At this juncture, however, the parties have not briefed this specific issue, nor do the record cites provided address the issue of the business status of 007 vis a vis Bonino. This Court cannot be expected to recall such evidence without the assistance of the record.

During jury deliberations the jury presented the following two questions:

- Why are John Bonino and 007 Bail Bonds separate on the Verdict Form?

- Is 007 Bail Bonds Agency still operating as a company?

[Doc. No. 449]. In response to these questions, the Court stated that "Mr. Bonino may be sued individually and 007 Bail Bonds may be sued," and referred the jury to Instruction No. 12.[5] With respect to the second question: the Court stated "it is

---

[5] This instruction stated:
    A corporation, like 007 Bail Bonds, is a creature of legal fiction which can act only through its officers, directors and other agents, and acts of a corporate agent which are performed within the scope of his authority are binding upon the corporate principal. Because of the nature of a corporation, it obviously can act through its agents. The ability of an officer of the corporation to bind the corporation to a contract is governed by the law of agency. For example, an executive officer, such as John Bonino, may bind a corporation, like 007 Bail Bonds, by way of an ordinary contract made in the regular course of a corporation's business dealings.

your recollection of the evidence that governs." Id.

Because this Court is without briefing or portions of the record that discuss this issue, it cannot make an appropriate determination at this time. The evidence before the jury, when combined with the jury instruction given, will guide this Court as to whether the jury's verdict may be reconcilable. For example, in Associated Business Telephone Systems Corp. v. Dalia, 729 F. Supp. 1488, 1507-08 (D.N.J. 1990), aff'd, 919 F.2d 133 (3d Cir. 1990), the Court was able to reconcile a verdict where the jury awarded punitive damages only against the officers of a corporation, the Cohns, but awarded only compensatory damages against the corporation. The Court found that the jury's error was "one of form, not of substance." Id. at 1508. In so doing, the Court stated that:

> we think it is clear that the reason the jury did not find the Cohns individually liable for compensatory damages is because they had already found the corporation liable, and they had an obvious desire to prevent a double recovery. The special interrogatories first requested that the jury determine the amount of compensatory damages to be assessed against the corporation. On the next line the interrogatories requested the same regarding the Cohns. By the time they filled out the first line, however, they had accounted for all the compensatory damages. The jury was not specifically instructed on joint and several liability, but that was their intent. It is apparent that they acted under the belief that an award against the corporation functioned as an award against the individual defendants. They found both the corporation and the Cohns guilty of conversion.

Id. The parties should discuss in their briefs whether similar

11

logic should apply in the instant case. Thus, this Court will require the parties to submit further briefing on this issue addressing the above points, which must include appropriate record citations. In the event the parties no longer wish to pursue this argument, it shall so advise the Court.

### IV. Attorney's Fees Based on Implied Contract

While the Court requires additional briefing and evidence on the issue of the jury's damages award, the parties have made additional submissions on the issue of attorney's fees. As set forth in the prior Opinion, this Court has questioned the availability of attorney's fees based in implied contract both as a matter of law and based on the evidence presented at trial. For that reason, the prior Opinion called on Plaintiff to submit specific citations to the trial record to support the award of attorney's fees rendered by the jury.

The Plaintiff's submissions have not convinced this Court that the fees are available as a matter of law.[6] Plaintiff has

---

[6] Again, the case law is clear that an implied contract, in and of itself, is insufficient to sustain an award of attorney's fees. See e.g., Agritrack, Inc., v. Dejohn Housemoving Inc., 25 P.3d 1187, 1193 (Colo. 2001)("The question of whether attorney's fees can be awarded on an implied contract is, at first blush, a legal one and can be easily answered. The answer is no: there is no authority in Colorado law that would permit attorney's fees to be awarded to the prevailing party on a quantum meruit claim.").

still cited no case law from this jurisdiction supporting an argument to the contrary in circumstances analogous to those currently before the Court. See e.g., Maule v. Phila. Media Holdings, LLC, 2010 U.S. Dist. LEXIS 105865 (E.D. Pa. Oct. 1, 2010)(discussing an express and not an implied contract). Even assuming, arguendo, that such fees were available via an implied contract theory, Plaintiff has nevertheless failed to point to evidence in the record sufficient to sustain such an award. Instead, Plaintiff points to evidence sufficient to sustain the other portion of the jury's award i.e., $3,307.00 premium on reported bonds and $65,280.00 on bond forfeiture judgments and consent judgments. See Doc. 487 (citing Trial Tr. at 848-849[7]).

Any attempts to point to liability for attorney's fees here mistakenly rely on the express terms of the written contract; a contract the jury found did not exist between the parties. See Doc. No. 450 (Jury Verdict finding no breach of express contract). For example, in arguing that attorney's fees are warranted, Plaintiff points to the Producer Agreement, presented as evidence at trial, which "specifically provided for Bonino/007 to indemnify FCS for any attorney's fees it incurred in enforcing the agreement." Doc. No. 488 at ¶ 16. Again, the

---

[7] The Court notes, however, that the portion of the record cited is from closing argument which, by definition, does not constitute evidence presented to the jury. Christine v. Davis, 600 F. App'x. 47, 50 (3d Cir. 2015).

jury did not find that this contract was breached. Instead, Plaintiff asks this Court to make a leap in logic and find that the jury "was . . . entitled to conclude the implied contract contained all the terms of the express contract which Bonino claimed was forged, including Paragraph 18 [which provides for indemnification for attorney's fees]."  There are, however, no citations to the record that support this conclusion; instead, Plaintiff tries to bootstrap the terms of Paragraph 18 of the express written contract into an implied agreement.

In light of the above, this Court finds that the attorney's fees award is not warranted and shall be stricken.  Because the fee award will not be upheld, this Court need not address the availability of contingent fees for an appeal.

V.   Conclusion

For the reasons set forth above, the Court finds that the parties shall submit briefs to this Court on the issue of the evidence presented to the jury regarding 007 Bail Bonds business status in relation to Bonino and whether the verdict can be reconciled.  The Court will enter the proposed judgment and enforce the settlement against the BGM Defendants.  Finally, the Court will strike the attorney's fees award from the verdict as unsupported by the law or evidence.  An appropriate Order will

14

issue this date.

                                                           s/Renée Marie Bumb
                                                           RENÉE MARIE BUMB
                                                           United States District Judge

Dated:    September 3, 2015